IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 18-cv-00620-MSK-MEH

C.N. by her next friends
ANASTASIA NEDD, and
JOSEPH NORTEY,

    Plaintiffs,

v.

HON. ANN GAIL MEINSTER,
KURT A. METSGER,
JEFFERSON COUNTY,
GRAHAM B. PEPER,
AMBER FARNSWORTH,
STEPHEN FARNSWORTH, and
JOHN DOES 1-5,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to Motions to Dismiss filed by Defendants Meinster **(# 46)**, Peper **(# 82)**, Jefferson County **(# 83)**, Metsger **(# 84)**, and Amber and Stephen Farnsworth **(# 85)**. As reflected in the record **(# 94)**, the Plaintiffs have not filed responses to any of the motions within the deadlines set by the Court, and thus, the Court deems the Plaintiffs to have waived the opportunity to respond to the motions. Also pending is the Plaintiffs' counsel's Motion to Withdraw from representation **(# 96)**, having taken "disability inactive status" with the Colorado Supreme Court effective October 18, 2018.

**FACTS**

The Plaintiffs' Complaint **(# 1)** is somewhat sprawling and unfocused. It contends that in 2015, Jefferson County, Colorado officials commenced a Dependency and Neglect ("D&N") proceeding against Plaintiff Joseph Nortey and an unnamed female, the parents of C.N., then a two-year-old girl.[1] Defendant Ann Meinster, a Colorado state District Judge in Jefferson County, presided over those proceedings. The Complaint takes issue with various aspects of the proceedings, including assertions that Judge Meinster lacked personal jurisdiction over C.N. or her parents, that Judge Meinster failed to ensure that C.N.'s mother received adequate notice of proceedings or accommodations for her mental health issues, and that Judge Meinster failed to give an adequate opportunity to Plaintiff Anastasia Nedd, C.N.'s grandmother, to request that C.N. be placed with Ms. Nedd. In June 2016, Judge Meinster terminated C.N.'s mother's parental rights; it appears that Mr. Nortey agreed to renounce his parental rights to C.N., albeit in response to ill-given advice by his attorney, Defendant Graham Peper.

The issue then turned to the placement of C.N. Ms. Nedd had previously expressed an interest in taking custody of C.N., and at least initially, Jefferson County officials represented to Ms. Nedd that C.N. would likely be placed with her and that she need not take any further legal action. However, Ms. Nedd points out that she was not notified of the termination of the parents' parental rights in June 2016, and it was not until March 2017 that Ms. Nedd formally moved to be considered as C.N.'s custodian. In April 2017, Judge Meinster denied Ms. Nedd's motion as untimely, and in July 2017, Judge Meinster had placed C.N. with foster parents, Defendants

---

[1] Defendant Metsger was C.N.'s guardian *ad litem* during the D&N proceedings. He is specifically mentioned twice in the Complaint, once in Paragraph 7, which identifies the parties, and once in Paragraph 37, which asserts that Mr. Metsger filed a motion to terminate the rights of C.N.'s parents, but failed to serve a copy of that motion on Ms. Nedd.

2

Amber and Stephen Farnsworth.  The Plaintiffs particularly object to the placement of C.N., who is black, with white foster parents, as Colorado statutory and regulatory laws require "cultural and familiar considerations" when making placement decisions and because Ms. Nedd (who is black) stood by willing and able to adopt C.N.

Based on these facts, the Plaintiffs assert nine claims for relief: (i) a claim, presumably under 42 U.S.C. § 1983 against all Defendants, that the Defendants violated the Plaintiffs' Substantive Due Process rights by disregarding C.N.'s right to be placed with blood relatives, the right to "not be placed for a long period of time in foster care without any certainty of permanency," and the right of blood relatives to be notified of D&N proceedings, among others; (ii) a somewhat uncertain claim, apparently under 42 U.S.C. § 1983 against all Defendants, captioned as "First, Ninth, and Fourteenth Amendments to the United States Constitution," and asserting that "the foregoing actions . . . amount to a policy, pattern, practice, or custom of failure to exercise professional judgment and of deliberate indifference to Plaintiffs' . . . liberty interests, privacy interests, and associational rights not to be deprived of relationships with blood relatives"; (iii) a claim, apparently under 42 U.S.C. § 1983 asserted against all Defendants, sounding in Procedural Due Process and alleging that the Defendants deprived the Plaintiffs of the same rights discussed in the Substantive Due Process claim; (iv) a claim expressly captioned as "42 U.S.C. § 1983 – all Defendants," and which seems to invoke the Plaintiffs' "associational rights, liberty, equal protection, and due process" rights, but which is otherwise difficult to parse and to distinguish from the preceding claims; (v) a claim pursuant to 42 U.S.C. § 1985 that "Defendants, or some of them," conspired to deprive the Plaintiffs of their civil rights; (vi) a claim against all Defendants pursuant to 42 U.S.C. § 1986, alleging that the Defendants had knowledge of the conspiracy alleged in claim (v) and failed to act to prevent it; (vii) and (viii)

claims, presumably under Colorado's common law, by Mr. Nortey against Mr. Peper, sounding in legal malpractice and breach of fiduciary duty; and (ix) a claim that all Defendants violated the RICO Act, 18 U.S.C. § 1961 *et seq.*, by forming an association "to perpetrate the various economic and personal injuries alleged herein."

Each of the named Defendants has moved to dismiss the claims against him/her/or it. The Plaintiffs have had several opportunities to file responses, *see Docket* # 87, 94, but they have not done so prior to prior to the deadlines imposed. Thus, the Court deems the Plaintiffs to have waived the opportunity to file responses.

## **ANALYSIS**

**A. Domestic Relations Exception**

All of the Defendants observe that most of the Plaintiffs' claims take issue with various decisions made by Judge Meinster during the Dependence and Neglect proceeding involving C.N., as well as the subsequent decisions regarding C.N.'s placement. These matters, the Defendants argue, implicate both the "Domestic Relations Exception" to federal subject-matter jurisdiction and the *Rooker-Feldman* doctrine.

The Domestic Relations Exception operates to exclude from federal subject-matter jurisdiction claims that ask federal courts to issue "divorce, alimony, or child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). In *Leathers v. Leathers*, 856 F.3d 729, 756 (10th Cir. 2017), the Court of Appeals described the exception more broadly, preventing federal courts from hearing claims that seek to "reopen, reissue, correct, or modify" domestic decrees. A fair argument could be made that most of the Plaintiffs' claims seek the correction or modification of Judge Meinster's custody orders involving C.N., and that the claims are therefore barred by the Domestic Relations Exception. But it is generally recognized that the Domestic

Relations Exception is a <u>statutory</u> exception, growing out of the diversity statute, 28 U.S.C. § 1332, and thus applies only in cases where the federal court's subject-matter jurisdiction is premised upon diversity. When the plaintiffs invoke the Court's subject-matter jurisdiction based on the existence of a federal question under 28 U.S.C. § 1331, the Domestic Relations Exception does not apply. *See e.g. U.S. v. Johnson*, 114 F.3d 476, 481 (4th Cir. 2012); *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 947 (9th Cir. 2008); *see also Johnson v. Rodrigues (Orozco)*, 225 F.3d 1103, 1111 (10th Cir. 2000) (suggesting that "despite the unavailability of that remedy in exercising diversity jurisdiction," due to the Domestic Relations Exception, "Plaintiff's underlying claims . . . must be considered in the context of federal question jurisdiction which is also asserted"). Thus, the Court does not agree with the Defendants that the Domestic Relations Exception precludes the Court's consideration of the Plaintiffs' claims.

**B.** *Rooker-Feldman/Younger*

The *Rooker-Feldman* doctrine provides that a losing party in state court may not "seek[ ] what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Morkel v. Davis*, 513 Fed.Appx. 724, 727 (10th Cir. 2013). *Rooker-Feldman* is not implicated simply because the plaintiff requests relief that is inconsistent with the state court judgment; it applies only where the claim essentially requires a finding that the state court wrongfully entered its judgment. *Adams v. EMC Mortgage Corp.*, 549 Fed.Appx. 718, 720 (10th Cir. 2013).

Here, the Plaintiffs' claims essentially spring from the contention that Judge Meinster's rulings – terminating C.N.'s parents' rights and rejecting Ms. Nedd's application for custody of

5

C.N. – violated their federal rights. Were this Court to entertain those claims and ultimately rule in the Plaintiffs' favor, it would necessarily have to conclude that Judge Meinster's rulings were incorrect, insufficiently-informed, premature, or otherwise reversible. Indeed, among the items of relief that the Plaintiffs seek in their Prayer for Relief are for this Court to "declare unconstitutional and unlawful . . . the above-noted constitutional violations" relating to Judge Meinster's orders and "enter a permanent injunction requiring that [C.N.] be placed with appropriate and willing blood relatives," instead of the Farnsworths as directed by Judge Meinster. In such circumstances, *Rooker-Feldman* prohibits the Court from hearing those claims.

Alternatively, if the proceedings before Judge Meinster are ongoing, rather than fully-concluded, the Court would abstain from hearing the Plaintiffs' claims here pursuant to *Younger* abstention instead. *Morkel*, 513 Fed.Appx. at 727-29 (reversing *Rooker-Feldman* dismissal but affirming *Younger* abstention in challenge to state court child custody proceeding that was ongoing).

### C. Remaining claims

Because abstention doctrines prevent the Court from hearing any claims that seek, directly or indirectly, to undo Judge Meinster's custody rulings, the Court's next task is to determine whether any of the Plaintiffs' claims are <u>not</u> affected by those rulings.

All but one of the Plaintiffs' constitutional claims must be dismissed on abstention grounds, as the injuries that appear to underlie those claims were allegedly caused by orders of the state court that terminate the parental rights of C.N.'s parents and rejected Ms. Nedd as a foster parent/custodian in favor of the Farnsworths. The one exception is Ms. Nedd's contention that, between July 2015 and December 2016, unspecified persons within the Jefferson County

Division of Children, Youth, and Families ("the Division") "led [Ms. Nedd] to believe that . . . she should not take any legal action for the child to be placed with her." *Docket # 1, ¶ 47*. When Ms. Nedd ultimately realized that she needed to formally petition for custody of C.N., the state court judge rejected her request as untimely. This ruling was premised upon Ms. Nedd's inaction which was allegedly in reliance on the Division's directions. Thus, this claim is properly brought against Jefferson County on the theory that it violated one or more of Ms. Nedd's constitutional rights by giving incorrect advice about petitioning for custody, and it survives dismissal based upon abstention principles.

In addition, the Plaintiffs' RICO claim could – at least conceivably – assert a conspiracy among parties that caused an injury distinct from the injuries caused by Judge Meinster's orders.

Finally, Mr. Nortney's claims of legal malpractice and breach of fiduciary duty against Mr. Peper, arising from legal advice he gave, also survives application of abstention doctrines.

Thus, the Court will proceed to consider the Defendants' arguments directed at these claims.

### 1. Claim against the Division/Jefferson County

As noted above, Ms. Nedd asserts that unspecified persons at the Division gave her incorrect legal advice about whether she should file a formal petition to seek custody of C.N. It is difficult to correlate this specific allegation with the Plaintiffs' vague and amorphous allegations of constitutional violations, however. This Court can conceive of no constitutional right that is implicated when a state or county agency dispenses incorrect legal advice about how a person should proceed in a pending judicial matter. *See e.g. Hutcherson v. Smith*, 908 F.2d 243, 246 (7th Cir. 1990) ("the due process clause of the fourteenth amendment does not transform

every tort committed by a state actor into a constitutional violation . . . Hutcherson's claim here is but a state law tort claim of attorney malpractice masquerading as a constitutional tort").

Moreover, even if Ms. Nedd had a colorable constitutional claim, she has not identified any individual employee of the Division who gave her the incorrect advice, and she has failed to plead sufficient facts to permit her to assert that claim against Jefferson County instead. Jefferson County is not subject to liability simply because employees within the Division gave inaccurate advice to Ms. Nedd; Jefferson County's liability is limited to those circumstances in which its <u>own</u> customs or policies relating to the Division caused the Division's employees to give inaccurate information. *See generally Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Complaint offers only conclusory and boilerplate assertions of Jefferson County's failure to train or supervise employees. Such conclusory assertions fail to meet the pleading requirements on the Plaintiffs imposed by *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Accordingly, the Court dismisses any claim by Ms. Nedd relating to the Division giving her incorrect legal advice.

    2. <u>RICO claim</u>

To adequately plead a RICO claim, the Plaintiffs must allege facts showing: (i) conduct, (ii) of an enterprise, (iii) through a pattern of racketeering activity. *Salinas v. U.S.* 522 U.S. 52, 62 (1997). RICO expressly defines the term "racketeering activity" to include violations of a wide range of federal criminal statutes, including mail fraud. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires allegations of at least two such acts, plus some indication of a threat of continuing racketeering activity. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010). A RICO "enterprise," in the context here, can consist of "a group of individuals associated in fact," even if not a legal entity, so long as it has: (i) a decision-making framework or mechanism

for controlling the group; (ii) individuals involved functioning as a continuing unit; and (iii) an existence separate and apart from the pattern of racketeering activity itself (that is, that the question "would [the enterprise] still exist were the predicate acts removed from the equation?" would be answered in the affirmative). *U.S. v. Smith*, 413 F.3d 1253, 1266-67 (10th Cir. 2005); *Amaya v. Bregman*, 149 F.Supp.3d 1312, 1231 (D.N.M. 2015).

Plaintiffs' RICO allegations are insufficient for multiple reasons. Nearly every allegation related to this claim is entirely conclusory. Moreover, even if the Plaintiffs' vague and conclusory allegations in the Complaint could be said to allege the existence of an enterprise, nothing in the Complaint seems to suggest that this enterprise had any existence separate from the D&N proceedings involving C.N., much less a threat that the parties involved would continue to engage in criminal activity in the future. For these and numerous other reasons, the RICO claim is dismissed.

3. Malpractice claim against Mr. Peper

The dismissal of all claims sounding in federal law terminates this Court's federal question subject-matter jurisdiction over this matter.[2] 28 U.S.C. § 1331. Although the Court can exercise supplemental jurisdiction over Mr. Nortey's malpractice and breach of fiduciary duty claims that arise under state law, 28 U.S.C. § 1367(c)(3) suggests that the Court should decline to exercise supplemental jurisdiction where all federal claims have been dismissed. Accordingly,

---

[2] Although Mr. Nortey is identified as a citizen of Texas, the Complaint does not identify the citizenship of Mr. Peper, nor attempt to assert that the Court should exercise subject-matter jurisdiction premised on diversity of citizenship under 28 U.S.C. § 1332. Even assuming the Court did, it would nevertheless dismiss Mr. Nortey's claims against Mr. Peper pursuant to C.R.S. § 13-20-602, as Mr. Nortey has not filed the "Certificate of Review" required under Colorado law when a party asserts claims sounding in professional malpractice.

the Court dismisses Mr. Nortey's state law claims for lack of subject-matter jurisdiction.  Mr. Nortey is free to pursue his state law claims against Mr. Peper in state court.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** each of the Defendants' Motions to Dismiss **(# 46, 82, 83**, **84,** and **85)**, and all the claims in the Complaint are **DISMISSED** as set forth herein.  Mr. Ingold's Motion to Withdraw as Counsel **(# 96)** is **GRANTED** upon Mr. Ingold serving his clients with a copy of this Opinion and Order.  All claims having been dismissed, the Clerk of the Court shall close this case.

Dated this 15th day of January, 2019.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge